UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANICE BRIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Janice Brim, and for her claims and causes of action against Defendant, Hartford Life and Accident Insurance Company, states as follows:

PARTIES

1. Janice Brim ("Brim") is a resident and citizen of the State of Kansas.

2. Defendant Hartford Life and Accident Insurance Company ("Hartford") is an out-of-state insurance company authorized to do business in the State of Kansas. The Commissioner of the Kansas Department of Insurance is authorized to accept service of process on behalf of Hartford.

JURISDICTION AND VENUE

3. Brim brings her claim pursuant to the Employment Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the District of Kansas under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Kansas.

## STATEMENTS OF FACT

10. Amazon.com Services, Inc ("Amazon") employed Brim as a Fulfillment Associate.

11. Brim remained actively at work until January 19, 2021.

12. During her employment, Brim began to suffer from a number of health conditions, including ongoing complications from carpal tunnel syndrome, Fibromyalgia, high blood pressure, pre- diabetes, major depression, anxiety, chronic back pain, insomnia, and long finger tendonitis. These conditions eventually rendered her incapable of continuing her job on a full-time, competitive basis.

13. Amazon sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

14. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

15. The Plan offered disability benefits to qualifying Amazon employee Plan participants.

16. At all relevant times, Brim has been a participant and covered person under the terms of the Plan.

17. Amazon is the administrator of the Plan.

18. The Plan's disability provisions are insured by a policy written by Hartford.

19. Amazon delegated or attempted to delegate the function of issuing LTD claim determinations to Hartford.

20. Amazon and Hartford entered into an administrative services contract through which Amazon paid Hartford for acting as claims administrator.

21. Brim attempted and failed working for the last day on January 19, 2021. (9/8/2020?)

22. After her leave from work, Brim applied to Hartford for short-term ("STD") and long-term disability ("LTD") benefits.

23. On September 2, 2021, Hartford approved Brim's claim from March 9, 2021 to September 6, 2022.

24. On September 14, 2022, Hartford denied Brim's claim.

25. On April 18, 2023, Brim requested her claim file and LTD policy.

26. On January 6, 2024, Brim appealed Hartford's denial, and provided medical records substantiating her disability.

27. On February 23, 2024, Hartford again denied Brims claim.

28. On February 26, 2024, Brim again requested her claim file and a copy of the policy Hartford relied upon when denying her claim.

29. On March 26, 2024, Hartford produced her claim file, and the LTD policy.

30. Hartford relied on the LTD policies when deciding Brim's claim.

31. The Plan and Policy articulate the conditions under which a Plan participant is entitled to LTD benefits.

32. The Policy defines the term "Disabled" as follows:

> "**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.

33. The Policy defines "Essential Duties" as:

> "**Essential Duty** means a duty that:
> 1) is substantial, not incidental;
> 2) is fundamental or inherent to the occupation; and
> 3) cannot be reasonably omitted or changed.
> Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty. However, working more than 30 hours per week is not an Essential Duty."

34. The Policy defines "Your Occupation" and "Any Occupation" as:

> "**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."
>
> "**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
> 1) the product of Your Indexed Pre-disability Earnings and 80%; or
> 2) the Maximum Monthly Benefit."

35. Both ERISA and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.

  e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

36. In her appeal, Brim provided medical evidence supporting her disability.
1. On June 8, 2020, Brim underwent carpal tunnel surgery performed by Dr. Craig Yager, MD. Following the nerve decompression surgery due to long finger intrinsic tendonitis and post-surgical right-hand numbness, Brim became unable to perform the substantial and material duties of her occupation and applied for LTD benefits through Hartford.
2. Brim's occupation required frequent and repetitive bilateral use of her hands.
3. Beginning June 21, 2020, Brim underwent physical therapy at ARC Physical Therapy. Brim reported difficulty with grasping items at work, and an inability to "make rate."
4. On June 25, 2020, Brin was seen for physical therapy and reported difficulty with dressing, grasping, and weightbearing.
5. On July 16, 2020, Brim was seen for physical therapy, and reported difficulty with pushing and pulling activities, and with grasping items in her hand.
6. On July 31, 2020, Brim was seen for physical therapy, due to her inability to meet her job demands her physical therapy was continued for 3-4 more weeks.
7. On August 14, 2020, Brim was again seen for physical therapy.
8. By August 21, 2020, Brim had completed 17 physical therapy treatment sessions.
9. On September 8, 2020, Dr. Yager completed a Work Restriction Report. In it, he reported that Brim's condition restricted her from any repetitive use of her right hand. He also judged that with respect to her right hand, Brim had reached "maximum medical improvement," and therefore deemed that these restrictions were "permanent."

10. On January 1, 2021, Tina Soltys, DO, completed an Attending Physician Statement. Dr. Soltys noted that Brim suffered from functional impairment in that she was "unable to use hand fully" due to numbness, tingling and weakness. As Dr. Illig later determined, Dr. Soltys found that Brim should "never" engage in fin or gross manipulation with her right hand. Her lifting and weight limitations were even more restrictive, finding that Brim should not lift or carry more than nominal weight.

11. On November 1, 2022, Brim was seen and evaluated by Shawn Illig, MD. Dr. Illig noted Brim's history of carpel tunnel syndrome, post-surgical numbness, and right long finger tendonitis. Based on his examination, Dr. Illig diagnosed Brim with right hand tendonitis and carpel tunnel syndrome of the right wrist.

12. In conjunction with his November 1, 2022, examination of Brim, Dr. Illig also completed and signed an Attending Physician Statement. In it, he certified that Brim's right hand pain and numbness was one of her disabling conditions. He limited Brim to lifting or carrying no more than five pounds and restricted her from fine or gross manipulation.

13. On November 8, 2021, Brim was seen at Heartland Primary Care for hand pain. Brim was currently doing physical therapy and reported that her hand pain was not improving.

14. On June 20, 2023, Brim saw Dr. George Bures, MD, to reestablish care.

15. On October 30, 2023, Brim saw Dr. Bures for a follow-up on her numerous medical issues.

16. On January 25, 2024, February 6 and February 9, 2024, Hartford employees performed reviews of Brims claim.

17. On January 25, 2024, unnamed Hartford employees, Vocational Rehabilitation Case Manager("VRCM"), and Medical Clinical Case Manager ("MCCM") began their review

of Brim's medical limitations and restrictions. Hartford's VRCM confirmed that the restrictions were incomplete. Hartford's MCCM attempted to clarify the incomplete restrictions but failed. Despite failing to confirm the restrictions, the MCCM opined that Brim would be capable of performing sedentary level work.

18. On February 9, 2024, Vocational Case Manager ("VCM") Lisa Hufford, found that Brim possessed transfereable skills to work in 16 occupations full-time. Ms. Hufford's review was based solely on the functional capablilities analysis performed by Hartford's Medical Case Manager on January 29, 2023. That review opined that Brim could lift 10 pounds occassionally.

19. Hartford failed to perform a function-by-function vocational analysis of Brim's occupation.

20. Hartford's VRMC, MCCM, and VCM did not actually meet, treat, or examine Brim.

21. Brim has at all relevant times met the definition of "Disability" under the Plan and is entitled to benefits.

22. Brim timely appealed Hartford's denial of her claim for benefits.

23. On February 23, 2024, Hartford upheld its denial of benefits.

24. Brim has exhausted her administrative remedies and Hartford refuses to take further action in connection with her claim.

CAUSES OF ACTION

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

25. Brim realleges the preceding paragraphs as if fully set forth herein.

26. Brim is entitled to all unpaid and accrued LTD benefits, as Hartford:

      a. Made an unfavorable decision without substantial evidence;

      b. Failed to properly consider Taylor's medical impairments and resulting limitations; and

      c. Issued an unfavorable decision that was arbitrary and capricious.

27. Hartford has not satisfied its obligation to pay Brim's LTD benefits.

28. Hartford denied LTD benefits when the applicable medical record supports upholding LTD benefits.

29. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Brim prays for judgment against Hartford for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

37. Brim realleges the preceding paragraphs as if fully set forth herein.

38. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

39. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

40. Hartford, the Plan's designated claims administrator, is a fiduciary.

41. Hartford participated in and benefitted from the Plan as previously indicated.

8

42. Hartford's claims management practices are motivated by financial incentives in its administrative services agreement with HCA.

43. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Hartford operates under an inherent conflict of interest.

44. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

45. Hartford breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

    b. Refusing to administer the claim when the 180-day deadline was extended by National Emergency;

    c. Failing to properly administer the claim;

    d. Engaging in a structural conflict of interest by assuming the role of both claims administrator and payor of benefits;

    e. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence;

    f. Refusing to utilize fully executed authorizations to attempt to obtain all relevant evidence to Brim's claim for benefits;

46. Hartford denied Brim's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

47. Hartford failed to discharge its duties solely in the interests of its participants and

beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Brim and the Plan's participants and beneficiaries generally.

48. Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

49. Hartford's violations of regulations alone allow Brim the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

50. Hartford's violations of federal regulation also subject its decision to *de novo* review.

51. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Brim prays for an order that Hartford retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity; for an equitable accounting of benefits that Hartford has withheld; for the disgorgement of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

        Respectfully submitted,

        BURNETTDRISKILL, Attorneys

        By: /s/ Derrick A. Pearce
        Derrick A. Pearce, KS # 16752
        Benjamin R. Narrell, KS#79228
        103 W 26th Ave., Ste. 290
        North Kansas City, MO  64116
        P: 816.781.4836
        F: 816.792.3634
        dpearce@burnettdriskill.com
        bnarrell@burnettdriskill.com
        ATTORNEYS FOR PLAINTIFF